**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CIVIL ACTION NO. 20-115-DLB-CJS

JUDITH LUBBERS, individually and as　　　　　　　　　　　　　　　PLAINTIFF
Executrix for the Estate of William Lubbers


v.　　　　　　　　MEMORANDUM OPINION AND ORDER


JOHN R. JURGENSEN CO.　　　　　　　　　　　　　　　　　　　　DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is a wrongful death action brought in diversity by Judith Lubbers against the John R. Jurgensen Co. ("Jurgensen"). Jurgensen has filed a Motion to Change Venue (Doc. # 6), and a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 7). Both motions have been fully briefed and are ripe for review. (Docs. # 6, 7, 13, 14, 18, 19, 20, 21. For the reasons stated below, Jurgensen's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 7) is **GRANTED,** and its Motion To Change Venue (Doc. # 6) is **DENIED AS MOOT.**

I.　　FACTUAL AND PROCEDURAL BACKGROUND

Judith Lubbers is a longtime resident of Kenton County, Kentucky, where she and her late husband, William Lubbers, lived together in Fort Wright for more than 30 years. (Doc. #14-3 at 1). Mr. and Mrs. Lubbers were avid bicyclists, and on August 13, 2019, they met a group of fellow cyclists in Newport, Kentucky, for a bicycle ride across the Ohio River, into Cincinnati, Ohio, and then back to Newport, Kentucky. (*Id.*) After crossing the Purple People Bridge into Cincinnati, the group cycled along Riverside Drive in Cincinnati

1

and eventually circled back on Riverside Drive, planning to cross the bridge again and return to Kentucky. (Doc. # 21-1 at 1).

In the meantime, Jurgensen, a construction company incorporated in Ohio and with its principal place of business in Cincinnati, Ohio, (Doc. # 1 ¶ 2), was doing roadwork on Riverside Drive, along which Mr. Lubbers, Mrs. Lubbers, and their fellow cyclists were traveling. (Doc. # 7 at 2-3).

Unfortunately, before the cycling group could return to Kentucky, Mr. Lubbers was involved in a bicycle accident on or near the Riverside Drive construction site in Cincinnati. (Doc. # 1 ¶ 14). Mr. Lubbers was severely injured in the accident, and an ambulance took him to University of Cincinnati Medical Center (*id.* at ¶ 15), where he remained in intensive care until January 2020, more than four months after the accident occurred. (Doc. # 14-3 at 2). Upon his release from University of Cincinnati Medical Center, Mr. Lubbers was admitted to a rehabilitation hospital in Northern Kentucky, but he continued to suffer from medical issues related to his injuries. (*Id.*) Mr. Lubbers never returned home, and in June 2020, he passed away at St. Elizabeth Hospital in Fort Thomas, Kentucky. (*Id.*)

After her husband's death, Mrs. Lubbers filed this lawsuit in diversity, seeking damages under Kentucky law for negligence, loss of consortium, and negligent infliction of emotional distress ("NIED"). (Doc. # 1 at 4-5). Specifically, Mrs. Lubbers has alleged that Jurgensen's negligent construction on the Riverside Drive project caused her late husband's accident and subsequent injuries to herself and Mr. Lubbers. (*Id.*).

After being served with the lawsuit, Jurgensen did not file an answer. Instead, it filed three simultaneous motions with the Court: (1) a Motion for a Choice of Law

Determination, (2) a Motion to Change Venue (Doc. # 6), and (3) a Motion to Dismiss for Lack of Personal Jurisdiction (Doc # 7). The Court denied the Motion for a Choice of Law Determination as premature without prejudice, and ordered discovery on the remaining two motions. (Doc. # 12). The parties filed responses and replies for each motion, and they are thus now ripe for review. (Docs. # 13, 14, 18, 19, 20, 21). Mrs. Lubbers also filed supplements to her responses, which have been considered by the Court. (Docs. # 20 and 21).

For the reasons that follow, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **granted**, and Defendant's Motion to Change Venue is **denied as moot**.

## II.     ANALYSIS

### A.     Standard of Review

When a motion to dismiss for lack of personal jurisdiction is brought by a defendant, the court must construe the pleaded facts in the light most favorable to the plaintiff, taking care to "not weigh the controverting assertions of the party seeking dismissal." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The burden of proof in a personal jurisdiction contest rests squarely on the plaintiff, who must set forth specific facts, by affidavit or otherwise, to establish the court's personal jurisdiction over the defendant. *See, e.g., Hall v. Rag-O-Rama, LLC*, 359 F.Supp.3d 499, 504 (E.D. Ky. 2019) (internal citations omitted). Those facts need not be exhaustive; in short, the plaintiff "must only make a *prima facie* showing of personal jurisdiction" to survive a motion to dismiss. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).

But what constitutes a "*prima facie* showing of personal jurisdiction?" In diversity actions such as this one, a federal court may exercise personal jurisdiction over an out-of-state defendant only when a state court sitting in the forum state could do so. *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997)). For that reason, this Court evaluates the Defendant's motion to dismiss under the laws of the Commonwealth of Kentucky.

### B. Personal Jurisdiction in Kentucky

One of the most-well established principles in American law is the idea that a state may exercise "general" personal jurisdiction over its own citizens in any type of dispute.[1] In short, a defendant can always be sued in a state where that defendant is domiciled, but a defendant can also be sued in a state where she is *not* domiciled, if that state's courts can establish "specific" personal jurisdiction over her. Specific jurisdiction requires that the non-resident defendant has "purposefully availed" herself of the forum state by way of deliberate contacts and activities with that state. *See, e.g., Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (collecting cases). In response to the Supreme Court's development of the law on specific personal jurisdiction, many states enacted "long-arm statutes" designed to plainly enumerate activities by which non-resident defendants can "purposefully avail" themselves to personal jurisdiction inside a state's courts. 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1068 (4th ed. 2021).

---

[1] See, e.g., *Ford Motor Company v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("In what we have called the 'paradigm case,' an individual is subject to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business.'" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

Kentucky's Long-Arm Statute is located at KRS 454.210, and it lists nine categories of conduct that give rise to specific personal jurisdiction in the Commonwealth, in addition to the qualifier that a claim brought under the statute must "arise from" conduct categorized by the statute.[2]  Ky. Rev. Stat. Ann. § 454.210(2)(a)-(b).  The Kentucky Supreme Court has interpreted the Long-Arm Statute to provide a "two-step process" for asserting specific jurisdiction over non-resident defendants.  *See Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011) (citing *Caesar's Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011)).  But confusingly, that "two-step process" actually contains more than two steps.

In *Caesar's Riverboat Casino*, the Kentucky Supreme Court wrote that the "first step" is to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories."  336 S.W.3d at 57.  However, that "first step" actually contains two steps within it: (1) the conduct must fall into one of the enumerated categories, and (2) the cause of action must "arise from" that conduct.[3]  The more straightforward "second step" in the analysis

---

[2]     The statute also defines "person" as "an individual … or a corporation … who is a nonresident of this Commonwealth."  Ky. Rev. Stat. § 454.210(1).

[3]     Furthermore, in *Caesar's Riverboat Casino*, the Kentucky Supreme Court adjudicated the "first step" in under two separate headings.  336 S.W.3d at 57-59.  *See also Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 505 (E.D. Ky. 2019) (describing the "arising from" prong as a "separate requirement" from the *Caesar's Riverboat Casino* "two-step analysis" and enumerating it in a separate section of the opinion); *Valvoline, LLC v. Harding Racing, LLC*, No. 5:20-CV-168-GFVT, 2021 WL 356895, at *5 (E.D. Ky. Feb. 2, 2021) (describing the "arising from" requirement as the "second prong of Kentucky's long-arm analysis"); *Shehan v. Turner Const. Co.*, No. 18-CV-14-DLB, 2019 WL 1320046, at *8 (E.D. Ky. Mar. 22, 2019) ("Even assuming the [defendant] did engage in persistent solicitation of business in Kentucky, [the plaintiff] has failed to assert his injury *arises out of* this conduct."); *Pinkerton Tobacco Co., LP v. Kretek Int'l, Inc.*, no. 4:20-CV-24-JHM, 2020 WL 5648136, at *2 (W.D. Ky. Sept. 21, 2020) ("The statute also contains a separate requirement that a plaintiff's claim 'arise from' the enumerated conduct."); *Finance Ventures v. King*, 131 F. Supp. 3d 677, 684 (W.D. Ky. 2015) (describing the "arising from" requirement as one of the "two prongs" of the *Caesar's Riverboat Casino* analysis).

5

requires courts "to determine if exercising personal jurisdiction over the non-resident defendant offends her federal due process rights." 336 S.W.3d at 57. In summary, Kentucky's long-arm jurisdiction analysis could perhaps be better described as a three-step process, or as a two-step process with an intermediary step contained within the first.

Nonetheless, taking care to avoid the "two-step" misnomer, this Court thus applies the following rule in accordance with Kentucky law: when a federal court in Kentucky, sitting in diversity, evaluates specific personal jurisdiction over a non-resident defendant under Kentucky's Long-Arm Statute, it must (1) determine whether a defendant's conduct fits into one of the nine enumerated categories provided by Kentucky's Long-Arm Statute, (2) determine whether the specific cause(s) of action brought by the plaintiff "arise(s) from" the defendant's conduct identified in the first step, and (3) evaluate the defendant's contacts with Kentucky to determine whether asserting personal jurisdiction would comport with the defendant's federal due process rights. All three requirements must be satisfied for Kentucky's Long-Arm Statute to successfully confer personal jurisdiction.

    **C.**     **Plaintiff has failed to establish a *prima facie* case for personal jurisdiction.**

        **1.**     **Defendant's Residency Status**

As Plantiff's first argument in favor of establishing Kentucky personal jurisdiction over Defendant, she boldly asserts that "John R. Jurgensen Co., is a resident of Kentucky," (Doc. # 14 at 2) and that therefore, *Caesar's Riverboat Casino* "does not apply" to her case. (Doc. # 14 at 5). Presumably, Plaintiff argues that the Long-Arm Statute also is not applicable. In the alternate, Plaintiff also argues that "in the event that this court were to find that the Defendant actually is not a resident of Kentucky," then the

Long-Arm Statute does, in fact, apply. (*Id.* at 2). That "event" has undoubtedly occurred—Defendant is a "nonresident" of Kentucky, and the Long-Arm Statute is applicable.

### (a) Defendant is a "nonresident" of Kentucky.

Kentucky's Long-Arm Statute does not provide a definition of "nonresident." *See* Ky. Rev. Stat. 454.210. Nonetheless, after examining other Kentucky statutes and Kentucky case law, the Court concludes that Jurgensen is a "nonresident" for purposes of Kentucky's Long-Arm Statute.

First, KRS 454.260 provides definitions for KRS 454.270 and 454.280, located within the same chapter as the Long-Arm Statute. In relevant part, KRS 454.260(4) defines "nonresident" as "any business or corporation which does not have the home office or principal place of business in the State of Kentucky." Similarly, federal law on corporate citizenship for jurisdictional purposes more broadly states that a corporation is a citizen of any state in which it is incorporated *and* where it has its principal place of business.[4] 28 USC § 1332(C)(1).

Kentucky case law, meanwhile, is unfortunately unclear with respect to defining corporate residency.[5] But most courts applying the Kentucky Long-Arm Statute have

---

[4] While 28 USC § 1332 specifically relates to establishing corporate domicile for purposes of diversity jurisdiction, Kentucky courts have repeatedly used that framework when answering questions of corporate residency. *See supra* note 7. Furthermore, "the law affords a rebuttable presumption that a person's residence is his domicile," *Mason v. Lockwood, Andrews & Newnam, PC*, 842 F.3d 383, 390 (6th Cir. 2016). And so while recognizing "domicile" as a term with a specific meaning for purposes of diversity jurisdiction, the Court also construes § 1332's definition of "corporate citizenship" as instructive with respect to the instant question of corporate residency.

[5] Only two Kentucky cases have defined corporate residency outright. Both deal with commercial transactions governed by the UCC, and both said that corporate residency is determined by the company's state (or county) of incorporation. See *ITT Comm. Fin. Corp. v. Madisonville Recapping Co.*, 793 S.W.2d 849, 851 (Ky. Ct. App. 1990) (". . . a corporate owner resides for purposes of KRS 376.440 in the county where his registered office [by articles of incorporation] is located); *National Cash Register Co. v. K.W.C., Inc.*, 432 F. Supp. 82, 84 (E.D. Ky. 1977) (". . . corporate residence should be fixed by reference to the articles of incorporation.

seemed to follow the federal statutory standard for corporate citizenship, routinely applying Kentucky's Long-Arm Statute to businesses that are incorporated in states other than Kentucky and that hold their principal places of business outside of Kentucky, and mentioning both locations in their reasonings.[6]  For that reason alone, the Court is initially inclined to apply the federal standard for corporate citizenship to the instant question of corporate residency.

Alternatively, to the extent that one might claim KRS 454.260 provides a "Kentucky standard" for corporate residency, the Court would also disagree.  In short, KRS 454.260 is less lenient than the federal standard, as the Kentucky statute provides for only one avenue of establishing Kentucky residency (home office or principal place of business),[7] whereas the federal standard provides for two (state of incorporation *and* principal place of business).  The Court is called to construe factual ambiguities in the light most favorable to the plaintiff in this question.  *Air Prods. & Controls, Inc.*, 503 F.3d at 549.  By extension, the Court also reasons that it should construe legal ambiguities in the same light, and for that reason, the Court will apply the more lenient federal standard for corporate citizenship to determine corporate residency for purposes of Kentucky's Long-Arm Statute.

---

. . .").  However, in the approximately 30 and 40 years since they were decided, neither of case has been cited in any case dealing with personal jurisdiction.

[6]   *See, e.g., Brewer v. Alliance Coal, LLC, et al.*, No. 20-41-DLB-EBA, 2021 WL 3057380, at *3 (E.D. Ky July 20, 2021) (extending long-arm jurisdiction in Kentucky to a partnership organized in Delaware with principal place of business in Oklahoma);  *Legacy Hemp, LLC v. Terramax Holdings Corp.*, No. 5:20-CV-90-TBR, 2021 WL 210723, at *2 (W.D. Ky. Jan. 20, 2021) (analyzing the Kentucky Long-Arm Statute with respect to a Canadian corporation with its principal place of business in Canada);  *Wilson v. Case*, 85 S.W.3d 589 (Ky. 2002) (applying the Kentucky Long-Arm Statute to a Delaware corporation with a principal place of business in Virginia) *overruled on other grounds by Caesar's Riverboat Casino*, 336 S.W.3d at 57.

[7]   Generally speaking, a corporation's home office is also its "principal place of business." *See Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010).

8

Unfortunately for Plaintiff, however, an application of the more lenient standard does not yield a more favorable result, as Defendant is neither incorporated in nor holds its principal place of business in Kentucky. In support of her assertion that Defendant "is a resident of Kentucky," Plaintiff has provided two documents: first, a 1961 certificate from the Kentucky Secretary of State authorizing Jurgensen to conduct business in Kentucky and designating a Kentucky agent for service of process (Doc. # 14-1), and second, a digital printout of Jurgensen's "annual report online filing" with the Kentucky Secretary of State (Doc. # 14-2). Plaintiff claims that these documents demonstrate that Jurgensen "since 1961 has availed itself of personal jurisdiction within this Commonwealth" (Doc. # 14 at 2), and that "Defendant maintains a Kentucky address in Frankfort, Kentucky" (Doc. # 14 at 5) by nature of its registered agent, CT Corporation System, located in Frankfort.[8]

All corporations doing business in Kentucky, regardless of residency, are required to register an agent in Kentucky for service of process. Ky. Rev. Stat. § 14A.9-010(1). Additionally, courts have rejected the argument that designating an agent for service of process is sufficient to establish personal jurisdiction. *Carter v. Paschall Truck Lines, Inc.*, 388 F. Supp. 3d 883, 893-94 (W.D. Ky. 2019) (". . . a corporation having a registered agent in Kentucky did not establish a prima facie showing of jurisdiction.") (citing *Stuart v. Lowe's Home Centers, LLC*, No. 4:17-CV-077-JHM, 2017 WL 4875281, at *2 (W.D.

---

[8]   CT Corporation is the largest registered agent service firm in the world, with more than 300,000 clients across the country. *CT Corporation*, WIKIPEDIA, https://en.wikipedia.org/wiki/CT_Corporation (last visited Sept. 7, 2021). Appointment of a registered agent in CT Corporation's Frankfort office can be done on its website by any individual or entity for a fee of $305. *Kentucky Registered Agent Services*, WOLTERS KLUWER, https://www.wolterskluwer.com/en/solutions/ct-corporation/kentucky-registered-agent-services (last visited Sept. 7, 2021).

Ky. Oct. 27, 2017).  In short, showing a registered agent for service of process speaks to neither a company's state of incorporation nor principal place of business, which are the only relevant criteria here.

But perhaps most fatal to Plaintiff's argument is that the forms she provided, which she purports to establish Defendant's Kentucky residency, affirmatively designate Defendant as an Ohio corporation with its principal place of business in Ohio.  *See* Doc. # 14-1 at 1 ("... John R. Jurgensen Co., is a corporation of the State of Ohio....");  Doc. #14-1 at 2 ("... as an agent, upon whom process may be served for the John R. Jurgensen Co., a foreign corporation, a Corporation of Ohio....");  Doc. # 14-2 at 1 (listing "State of [O]rigin" as Ohio, and Principal Office at an address in Cincinnati, Ohio).  Thus, having been incorporated in Ohio, under Ohio law, and having its principal place of business in Ohio, Defendant is a "nonresident" of Kentucky for purposes of the Long-Arm Statute.

### (b)    *Caesar's Riverboat Casino* is not distinguishable.

According to Plaintiff, the Kentucky Supreme Court's holding in *Caesar's Riverboat Casino* was entirely contingent on the defendant's non-Kentucky domicile and lack of business facilities in Kentucky.  (Doc. # 14 at 5).  The Court is conclusively unpersuaded by Plaintiff's assertion, but endeavors nonetheless to address it, as Plaintiff bears the burden of proof, and based on her pleadings, she seems to have rested a sizeable portion of her argument in support of personal jurisdiction on this theory.  (*See id.*)

To begin, it is unclear to the Court what exactly Plaintiff purports to do with this theory, as she has not stated why distinguishing *Caesar's Riverboat Casino* would be helpful to her case.  But even assuming *arguendo* that the case could be distinguished, such an argument would be entirely futile, as Plaintiff has proven neither Kentucky

10

domicile nor Kentucky business facilities with respect to Defendant. She has only provided facts on Defendant's registered agent for service of process and a statutorily-required certificate to do business. (*See supra* (c)(1)(A)). For these reasons, the Court is not convinced of Plaintiff's theory on the inapplicability of Kentucky's leading case on personal jurisdiction.

Additionally, the Court finds it somewhat disingenuous that Plaintiff chooses to raise an argument on domicile. Even though she never directly asserts that Defendant is domiciled in Kentucky, she does assert that Defendant is a resident of Kentucky, and that the *non-domicile* of the *Caesar's Riverboat Casino* defendant is a distinguishing factor. (Doc. #14 at 5). Notably, if Plaintiff established a Kentucky domicile for Defendant, she would defeat the Court's subject-matter jurisdiction over her case, as she filed it in diversity jurisdiction under 28 U.S.C. § 1332, which requires the parties to be domiciled in different states. (Doc. # 1 ¶ 3). If Plaintiff defeated subject-matter jurisdiction, even inadvertently, the Court would have no choice other than to dismiss this matter *sua sponte*, as personal jurisdiction is mooted in the absence of subject matter jurisdiction, which confers the Court's broader ability to hear the dispute. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp*, 546 U.S. 500, 514 (2006).

### 2. Defendant has "transacted business" in Kentucky within the meaning of section (2)(a)(1).

After establishing the applicability of Kentucky's Long-Arm Statute, the Court now moves to applying the statute itself. As previously stated, applying the statute requires two steps: first, determining whether Defendant's conduct fits into one of the enumerated categories, and second, determining whether the cause of action "arises from" that conduct. *Caesar's Riverboat Casino*, 336 S.W.3d at 57.

11

Plaintiff has invoked subsections (1), (2), and (4) of the Long-Arm Statute, which extend personal jurisdiction over any person as to a claim arising from (1) "[t]ransacting any business in this Commonwealth," (2) "[c]ontracting to supply services or goods in this Commonwealth," and (4) "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business . . . provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth." Ky. Rev. Stat. §§ 454.210(2)(a)(1)-(4).

Defendant, in turn, conceded that it transacts business in Kentucky. (Doc. # 18 at 1). Because Defendant is a construction company, the Court thus accepts that Plaintiff has met her burden of a *prima facie* showing of Defendant's conduct within the first two enumerated categories in Kentucky's Long-Arm Statute, providing for "transacting business" and "contracting to supply goods and services" in Kentucky. Ky. Rev. Stat. §§ 454.210(2)(a)(1), (2). But with respect to the fourth category, Plaintiff has not met her burden, for reasons which merge with the next section of analysis, as the fourth category also requires that the alleged injury "arise out of the doing or soliciting of business." *Id.* at § (2)(a)(4).

### 3. *Plaintiff's claims do not "arise from" Defendant's transacting of business in Kentucky.*

The final step of applying Kentucky's Long-Arm Statute is the "arising from" prong, which the Kentucky Supreme Court has stated is a "common sense analysis" to determine whether there is a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction. . . ." *Caesar's Riverboat Casino*, 336 S.W.3d at 59. In other words, "the cause of action must have originated

12

from, or came into being as a result of," the defendant's activities which have been determined to fall under one of the enumerated categories. *Id.* at 58. Here, Plaintiff has not shown if or how her claims arise from Defendant's contacts with Kentucky, let alone whether they arise from Defendant's *specific contacts* under the Long-Arm Statute's categories.

In support of personal jurisdiction, Plaintiff has provided restatements of her own contacts with Kentucky, but none of Defendant's contacts, except for the previously discussed unconvincing assertions regarding corporate citizenship. More specifically, she discusses in detail how the events giving rise to the lawsuit relate to Kentucky, in that Plaintiff and her late husband lived in Kentucky, the bicycle ride began and ended in Kentucky, and that the other riders were Kentucky residents. Doc. # 14 at 2-3. In Doc. # 21, by which Plaintiff supplements her response to Defendant's motion to dismiss, she provides four nearly identical affidavits which again bear no relation to Defendant's contacts with Kentucky. These affidavits seem to advance an argument that since the bicycle ride began and ended in Kentucky, personal jurisdiction can be established based on the case's contacts with Kentucky. (*See* Doc. # 21). Even though Plaintiff filed the Affidavits with no accompanying legal argument (*See id.*), the Court assumes that her argument falls along the lines of a "purposeful availment" theory, which requires the evaluation of specific contacts with the forum state. *See, e.g., Hall*, 359 F.Supp.3d at 508.

The affidavits and Plaintiff's argument are unsuccessful for two reasons. First, "purposeful availment" would relate to a federal due process analysis, which is the last step of the Kentucky personal jurisdiction framework, for completion *after* determining

13

compliance with the Long-Arm Statute. *See Blessing*, 988 F.3d at 904 (citing *Int'l Shoe v. Washington*, 326 U.S. 310 (1945)) (separately completing a Federal due process analysis after analyzing the Kentucky Long-Arm Statute). Second, even if "purposeful availment" did apply here, it relates to the *defendant's* contacts with the forum, and not the plaintiff's. *See Hall*, 359 F. Supp. 3d at 508 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Here, Plaintiff's affidavits of her own contacts and the claim's contacts with Kentucky do not help in her quest to establish personal jurisdiction by way of purposeful availment.

Furthermore, in an earnest effort to construe the pleadings in a light most favorable to the plaintiff, the Court can alternately assume that in filing the affidavits, Plaintiff attempts to rely on *Conrad v. Transit Auth. of N. Ky.*, No. 19-CV-23-DLB, 2019 WL 6829952 (E.D. Ky. Dec. 13, 2019), as *Conrad* was cited heavily by Plaintiff in her contemporaneous response opposing a transfer of venue in this case (*see generally* Doc. # 13), even though she did not cite *Conrad* in pleadings on the motion to dismiss. In *Conrad*, this Court decided a motion for choice of law and reasoned that "Courts have applied Kentucky law after finding significant contacts in vehicle accident cases when a route started and would have ended in Kentucky. . . ." Nonetheless, *Conrad* did not address personal jurisdiction, and the weighing of contacts in that case are neither applicable nor remotely persuasive to the question at hand, which is whether Plaintiff has shown that her claims against Defendant "arise from" its contacts with Kentucky.

Besides, the Sixth Circuit has clearly stated that with respect to actions taken outside of Kentucky, "merely causing a 'consequence' in Kentucky is insufficient to establish personal jurisdiction" under the Long-Arm Statute. *Blessing*, 988 F.3d at 902.

Here, Plaintiff has not demonstrated any actions taken by Defendant other than its filing of a certificate to do business, and its registration of an agent for service of process. Plaintiff has alleged negligence by Defendant with respect to an accident that occurred in Cincinnati, Ohio (*See, e.g.*, Doc. # 1 at 3-4), and even with respect to the injuries allegedly suffered by Plaintiff in Kentucky, Plaintiff has admitted in her Complaint that those injuries arose from the accident that occurred in Cincinnati, Ohio. (*See id.* at ¶¶ 25, 28). She stated in her Complaint: "As a direct, proximate and substantial result of [Defendant's] negligence *recited above*. . ." with "recited above" referring to her allegations of Defendant's negligent construction on a project in Cincinnati, Ohio. (*Id.*)

Unfortunately for Plaintiff, she did not reconcile those assertions in responding to Defendant's Motion to Dismiss. In fact, other than an unsuccessful argument to distinguish *Caesar's Riverboat Casino*, Plaintiff effectively bypassed the "arising from" prong entirely. (*See* Docs. # 14 and 21). And so even after liberally construing the pleadings in the light most favorable to Plaintiff, because she has not set forth any specific and relevant facts, by affidavit or otherwise, on how her claims "arise from" Defendant's contacts with Kentucky that fall under enumerated category of Kentucky's Long-Arm Statute, Plaintiff has not established a *prima facie* case for personal jurisdiction, and the case must be dismissed.

However, having granted Defendant's Motion to Dismiss, the Court reminds Plaintiff of her right to re-file this action within ninety (90) days of this Order. *See* KRS 413.270 (commonly referred to as Kentucky's "savings statute").[9]

---

[9] KRS 413.270 provides: If an action is commenced in due time and in good faith in any court of this state and the defendants or any of them make defense, and it is adjudged that the court has no jurisdiction of the action, the plaintiff or his representative may, within ninety (90) days from the time of that judgment, commence a new action in the proper court.

15

### III. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 7) is **GRANTED**;

(2) Defendant's Motion to Change Venue (Doc. # 6) is **DENIED AS MOOT**;

(3) Plaintiff's Complaint (Doc. # 1) is **DISMISSED**;

(4) This matter is **STRICKEN** from the Court's active docket; and

(5) An according Judgment is contemporaneously entered herewith.

This 7th day of September, 2021.

Signed By:
*David L. Bunning*   DB
United States District Judge

K:\DATA\ORDERS\Cov2020\20-115 Lubbers MTD.docx